**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X

DEQUAN LI.
*on behalf of himself and others similarly situated*

        Plaintiff,    **REPORT AND RECOMMENDATION**

   v.          **20-cv-06296 (KAM) (ST)**

NY CAPRI NAILS & SPA INC
  d/b/a Capri Nails & Spa
SUNGJUN AN
  a/k/a Sung Jun An
  a/k/a/ Eric An
HEEKYOUNG AN
  a/k/a Heek Young An

        Defendants.
-----------------------------------------------------------X

**TISCIONE, United States Magistrate Judge:**

  Plaintiff Dequan Li ("Plaintiff") brought an action against NY Capri Nails & Spa, Sungjun An and Heekyoung An ("Defendants") alleging, inter alia, overtime violations under the New York Labor Law ("NYLL"). Now before this Court is Plaintiff's Motion for Class Certification under Rule 23 of the Federal Rules of Civil Procedure ("Mot.").

  The Honorable Kiyo A. Matsumoto referred Plaintiff's Motion to the undersigned to issue a Report and Recommendation.

  For the below stated reasons, this Court respectfully recommends that Plaintiff's Motion for Class Certification be denied in its entirety.

## I.    BACKGROUND

### A. The Parties

Plaintiff, DEQUAN LI, asserts that he was employed by Defendants to work as a Massage Worker at 3155 Long Beach Rd Oceanside, NY 11572.  *See* Plaintiff's First Amended Compl. ¶ 9, ECF 8.

Defendant NY CAPRI NAILS & SPA INC. d/b/a Capril Nails & Spa is a domestic business corporation organized under the laws of the State of New York with a principal address at 3155 Long Beach Road, Oceanside, NY 11572.  *Id.* at ¶ 13.

Defendant SUNGJUN AN a/k/a Sung Jun An and a/k/a Eric An is Owner and Licenseholder of the Appearance Enhancement Business license of NY CAPRI NAILS & SPA INC d/b/a Capri Nails & Spa.  *Id.* at ¶ 17.  Plaintiff alleges Defendant Sungjun An: (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records at NY CAPRI NAILS & SPA INC d/b/a Capri Nails & Spa.  *Id.*

Defendant HEEKYOUNG AN a/k/a Heek Young An is Owner of NY CAPRI NAILS & SPA INC d/b/a Capri Nails & Spa, who Plaintiff alleges: (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records at NY CAPRI NAILS & SPA INC d/b/a Capri Nails & Spa.  *Id.* at ¶ 20.[1]

---

[1] Note, the Court agrees with Defendants' Opposition to Class Certification at 14 ("Opp."), ECF 72-1 that: "Plaintiff's Counsel is using the wrong caption" in the instant Motion.  Indeed, "Defendants Capri Nails & Eco Spa, Inc. and Defendant Jaewoo Kim made an offer of judgment pursuant to Rule 68 of the Fed R. Civ. P. on March 30, 2022 [*see* ECF 32] and on April 1, 2022, satisfaction of the judgment was entered against these two defendants. Therefore, the remaining defendants in this case are the buyers of the Nail Salon, NY Capri Nails & Spa, Inc. Defendant Sungjun An and his wife Defendant Heekyoung An." *See* Opp. at 4.  Hence, this Court has removed Defendant Capri Nails & Eco Spa, Inc. and Defendant Jaewoo Kim from the case caption and list of parties above.

### B. *Relevant Facts and Summary of Allegations*

The following summary of relevant facts and allegations is primarily derived from Plaintiff's Mot., *see* ECF 71, and the Affidavit of Dequan Li in Support of Plaintiff's Motion ("Li Aff."). *See* ECF 70. Recall that Plaintiff alleges that he was employed by Defendants on or about May 13, 2015 to March 16, 2020. *See* Plaintiff's Mot. at 6 (citing Li Aff. ¶ 3).[2] The pertinent allegations at issue are the following[3]:

### (1) *Wage Notices and Wage Statements*

Plaintiff asserts that he "did not receive a wage notice pursuant to N.Y. Lab. L. § 198.1(a) at his time of hire, or an adequate wage notice pursuant to same at any other time during his employment, nor was he permitted to keep any of the inadequate wage notices he was required to sign during his employment." *Id.* (citing Li Aff. ¶ 13; *see also* Li Aff. Ex. 4 [Wage Notices]).

Additionally, Plaintiff asserts that he: "did not receive proper wage notices reflecting his name; his employer's name, employer's address and telephone number, rate or rates of pay, any deductions made from wages, any allowances claimed as part of the minimum wage, and gross and net wages for each pay day in Chinese, Plaintiff's native language." *Id.* (citing Li Aff. ¶ 16). Moreover, Plaintiff asserts that he "was paid in cash, [and] was not furnished with wage statements." *Id.* (citing Li Aff. ¶ 16 and Deposition of Sungjun An ("An Dep."), dated October 20, 2022 at 326:10-14, ECF 67). Finally, Plaintiff asserts that "[n]otes pertaining to the employee's pay were periodically thrown out." *Id.* (citing An Dep. 287:5–22).

---

[2] Note, Plaintiff's Mot. is not paginated so the numbering above (i.e. page 6) refers to the numbering of the pdf file. Additionally, the Court notes that Li Aff. ¶ 3 provides that Plaintiff's last date of employment was March 15, 2020 instead of March 16, 2020, but this does not impact the Court's analysis *infra*.

[3] Given that Plaintiff's First Amended Compl. contains more allegations than are at issue in Plaintiff's instant Motion for Class Certification, the allegations summary *infra* is lifted from Plaintiff's Mot, which covers all of the pertinent allegations here. Specifically, Plaintiff's Reply at pdf page 11 concedes that: "[Plaintiff's] discrimination claims are entirely irrelevant to the wage-and-hour claims relevant to class certification."

Notably, despite these allegations, Plaintiff also concedes that he did in fact sign five (5) wage statements (though he argues the information contained therein is false) indicating that Plaintiff was paid on an hourly basis. *See* Li Aff. ¶ 13 (detailing the wage statements and false information they allegedly contained).

(2) *Overtime and Spread of Time Compensation*

Plaintiff asserts that: "Prior to about March 2020, Plaintiff regularly worked more than forty hours per week, and from time to time worked a spread of time greater than ten hours per day one, two, or three days per week." *See* Plaintiff's Mot. at 6 (citing Li Aff. ¶¶ 4–7, Exs. 1-3) [Calendars, Business Cards and Time Clock Punch Cards respectively]; *see also* Declaration of John Troy, dated June 4, 2023 ("Troy Decl.") Exs. 6-7 [Demonstrative of Calendars and Time Clock and Computation of Damages respectively], ECF 69. Plaintiff further asserts that: "[a]t all relevant times, his non-tipped work exceeds two (2) hours of his workday." *Id.* (citing Li Aff. ¶ 15). Moreover, Plaintiff also asserts that: "[h]is coworkers were scheduled similarly." *Id.* (citing Li Aff. ¶¶ 19–95).

Relatedly, "Plaintiff and the other employees were [allegedly] compensated at flat daily rates that did not include time-and-a-half for overtime hours, or a premium for days where their spreads of time exceeded 10 hours." *Id.* at 6-7 (citing Li Aff. ¶¶ 8–12, 96–112); *see also* An Dep. 267:5–18 (Plaintiff asserts that this deposition testimony shows "employees are paid eight hours Monday to Friday, *no matter how many hours they actually work*") (emphasis added)[4]; *cf* Li Aff. Ex. 3 [Time Clock Punch Cards], Troy Decl. Exs. 6-7 [Demonstrative of Calendars and Time Clock and Computation of Damages respectively] (arguing Plaintiff's hours frequently exceeded

---

[4] This language Plaintiff uses when summarizing An Dep. 267:5–18 will be discussed in more depth *infra* when discussing overtime. However, for now the Court notes Plaintiff's representation/summary concerning this deposition testimony as background for the forthcoming analysis.

40 per week, and 10 per day).  Finally, Plaintiff alleges that: "Plaintiff's full-time coworkers, at the Defendants' locations, were all likewise paid on a monthly basis before about March 2020." *Id.* at 7 (citing An Dep 227:15-18).

Notably, despite these allegations summarized above, Plaintiff also concedes that from about December 5, 2016 through November 12, 2017, Plaintiff's timecards are "relatively accurate as well as precise."  Li Aff. at ¶ 5.  Plaintiff further admits that "[a]fter about April 30, 2018 the time cards return to being relatively accurate."  *Id.*  Plaintiff's main objection is to the timecards "between about November 13, 2017 and April 1, 2018," which Plaintiff alleges "stop being even close to accurate and instead grossly misrecord [his] hours. . ."  *Id.*  Yet, for this specific period and for Plaintiff's entire employment with Defendants, Plaintiff does not present *any* contemporaneous or alternate hours he purportedly had worked.[5]

*C.  Procedural History*

On December 29, 2020, Plaintiff filed his Complaint against Defendants.  *See* ECF 1.[6] Plaintiff filed his First Amended Complaint on March 15, 2021.  *See* ECF 8.  Defendants filed their Answer to Plaintiff's First Am. Compl. on June 17, 2021.  *See* ECF 20.

On June 16, 2021, the Court approved the parties' Stipulation for Plaintiff's Motion for Conditional Collective Certification.  *See* ECF 19 and ECF entry dated June 16, 2021.  Pursuant to this Stipulation, Defendants produced a list of employees, which included 36 employees in total

---

[5] To the extent any additional facts and/or contentions from the Li Aff. are relevant to the Rule 23 certification analysis, they will be discussed *infra*.  However, this Court concludes that the facts and allegations outlined above, plus the Procedural History, are sufficient background to frame the forthcoming Rule 23 discussion.

[6] As noted above, "Defendants Capri Nails & Eco Spa, Inc. and Defendant Jaewoo Kim made an offer of judgment pursuant to Rule 68 of the Fed R. Civ. P. on March 30, 2022 [see ECF 32] and on April 1, 2022, satisfaction of the judgment was entered against these two defendants. Therefore, the remaining defendants in this case are the buyers of the Nail Salon, NY Capri Nails & Spa, Inc., Defendant Sungjun An and his wife Defendant Heekyoung An."  *See* Opp. at 4.

from 2016.  *See* ECF 69-5 [Exhibit Compiled List of Employees since 2016].[7]  However, on

October 8, 2021, the parties filed a Status Report and indicated that no Plaintiff has opted in for

the Collective Certification.  *See* ECF 24 (Status Report dated October 8, 2021).

On December 15, 2022, discovery was closed in this matter. *See* ECF 48 [Minute Entry

entered October 11, 2022] (extending deadline for completing post-deposition discovery to

December 15, 2022); ECF 52 [Minute Entry entered on December 19, 2022] (parties reported that

discovery is complete).  This Court also set the deadline for beginning dispositive motion practice

to January 20, 2023 in this same Minute Entry.  *See* ECF 52.

On January 25, 2023, Plaintiff requested a pre-motion conference regarding Plaintiff's

anticipated motions for: (1) summary judgment as to liability and (2) for class certification. *See*

ECF 54.  Relatedly, Plaintiff submitted a Rule 56.1 Statement of Undisputed Material Facts in

Support of Summary Judgment on the same day.  ECF 55.  On February 23, 2023, Defendants

submitted their Counter-Statement to Plaintiff's Rule 56.1 Statement.  *See* ECF 59.  Finally, on

March 13, 2023, Plaintiff filed his Rule 56.1 Statement Reply.  *See* ECF 61.[8]

On May 2, 2023, the Honorable Kiyo A. Matsumoto issued a briefing schedule for

Plaintiff's Motion for Class Certification.  *See* ECF Entry dated May 2, 2023.

On July 27, 2023, Plaintiff Dequan Li filed his Motion for Class Certification.  *See* ECF

68.  The bundle filing including Defendants' Opposition and Plaintiff's Reply was filed on July

27, 2023 as well.  *See* ECF 72.

---

[7] This list of employees will also be relevant to the Rule 23 numerosity discussion *infra* based upon the parties' submissions for the instant Motion.  Moreover, to be clear, while the Stipulation in ECF 19 requests employees from December 29, 2017, employees from 2016 are included in the list found at ECF 69-5.

[8] Note, the parties' Rule 56.1 Statement submissions are briefly mentioned above because they are attached to the parties' class certification briefing in the instant Motion, but upon further review, these documents do not impact or alter the Court's conclusions here regarding Rule 23 certification.

On October 5, 2023, the Honorable Kiyo A. Matsumoto referred this matter to the undersigned for a Report and Recommendation.  *See* ECF Entry dated October 5, 2023.

## II.    JURISDICTION

This Court has original federal question jurisdiction over this controversy under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331, and has supplemental jurisdiction over the NYLL claims pursuant to 28 U.S.C. § 1367(a).[9]

## III.    LEGAL STANDARD

In order to proceed on behalf of similarly situated employees on a claim under the NYLL, Plaintiffs must first seek class certification under Fed. R. Civ. P. 23.  *See Sipas v. Sammy's Fishbox, Inc.*, No. 05 CIV. 10319 (PAC), 2006 WL 1084556, at *3 n.3 (S.D.N.Y. Apr. 24, 2006) (citing *Scholtisek v. Eldre Corp.*, 229 F.R.D. 381, 391-95 (W.D.N.Y. 2005)).  Class certification of claims under New York Labor Law depends upon the satisfaction of the requirements set forth in Fed. R. Civ. P. 23(a).  *Marisol A. v. Giuliani*, 126 F.3d 372, 375 (2d. Cir. 1997).  The Second Circuit has instructed district courts to apply Rule 23 "'according to a liberal, rather than a restrictive interpretation' and to 'adopt a standard of flexibility.'"  *Torres v. Gristede's Operating Corp.*, No. 04 CIV. 3316 (PAC), 2006 WL 2819730, at *8 (S.D.N.Y. Sept. 29, 2006) (quoting *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 202 (S.D.N.Y. 2006) and *Marisol A.*, 126 F.3d at 377).  However, Rule 23's requirements "are more stringent than those of the FLSA."  *See Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 123 (S.D.N.Y. 2011).

---

[9] Note, while Plaintiff's instant Motion for Class Certification only concerns NYLL claims and does not mention any claims under the Fair Labor Standards Act ("FLSA"), Plaintiff's Amended Complaint contains a FLSA claim.  *See* Plaintiff's First Am. Compl. ¶ 3, ECF 8.  To be clear, the parties stipulated to Plaintiff's Motion for Conditional Collective Certification regarding Plaintiff's FLSA claim.  *See* ECF 19 and ECF Entry dated June 16, 2021 (Ordering Stipulation for Conditional Certification).  *See also e.g.*, *Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113 (S.D.N.Y. 2011) (case involving Collective Action FLSA certification and Rule 23 certification for NYLL claims).  While no Plaintiff has opted in for the Collective Certification here, *see* ECF 24 (Status Report dated October 8, 2021), supplemental jurisdiction exists for Plaintiff's NYLL claims since the FLSA claim has not been dismissed from the case.

Federal Rule of Civil Procedure 23 provides the standard for certification of class actions in federal court. Rule 23(a) sets forth the following requirements for class certification:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These four requirements are generally referred to as "numerosity, commonality, typicality, and adequacy of representation." *Pichardo v. Carmine's Broadway Feast Inc*., Nos. 15-CV-3312 (RA), 15-CV-4046 (RA), 15-CV-4049 (RA), 2016 WL 5338551, at *1 (S.D.N.Y. Sep. 23, 2016). Courts have also read an "implicit" ascertainability requirement into Rule 23(a). *In re Fosamax Products Liability Litigation*, 248 F.R.D. 389, 395 (S.D.N.Y. 2008) ("Rule 23 [also] contains the additional, implicit requirement that an ascertainable class exists and has been properly defined.").

Furthermore, Rule 23(b) provides for three different categories of class actions and sets forth the requirements of maintaining a class action. A class action is authorized under Rule 23(b)(3) when Rule 23(a) is satisfied and if:

> the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

Here, Plaintiff is seeking certification of their NYLL claims under Rule 23(b)(3). Thus, Plaintiff must demonstrate that "questions of law or fact common to the members of the class

predominate over any questions affecting only individual members," and that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Finally, this Court must define the class and class claims, issues, and defenses at the time of certification of the class pursuant to Rule 23(c) and must appoint class counsel pursuant to Rule 23(g). *See* Fed. R. Civ. P. 23(c), (g).

## IV.    DISCUSSION

Plaintiff seeks certification of the following class:

> "All who were employed or are currently employed by Defendants, other than Defendants themselves, during the six years immediately preceding the intuition of this action, *i.e.*, from December 29, 2014 through date the decision of this motion."

Hence, this Court will proceed to analyze each of the requirements under Rule 23(a) and (b). For the below reasons, this Court recommends that Plaintiff's Motion for Class Certification be denied based upon Plaintiff's failure to satisfy the requirements of commonality, typicality and predominance.

### A. *Rule 23(a) Requirements*

### 1. *Numerosity*

This Court concludes that Plaintiff has satisfied the numerosity requirement. Numerosity requires that the proposed class have so many members so as to make joinder of all members impracticable. *See* Fed. R. Civ. P. 23(a)(1). "[A] plaintiff need not present a precise calculation of the number of class members and it is permissible for the court to rely on reasonable inferences drawn from available facts[.]" *See Hill v. City of New York*, 136 F. Supp. 3d 304, 353 (E.D.N.Y. 2015), *order amended and supplemented*, No. 13CV6147PKCJO, 2019 WL 1900503 (E.D.N.Y. Apr. 29, 2019) (quoting *Velez v. Majik Cleaning Service, Inc.*, 03 CV 8698, 2005 WL 106895 at *2 (S.D.N.Y. January 19, 2005)) (internal quotations omitted). "While there is 'no magic

minimum number' to establish numerosity, courts in the Second Circuit generally presume that a class consisting of 40 or more members is sufficiently numerous." *Id.* (citing *Gortat v. Capala Bros.*, 949 F.Supp.2d 374, 383 (E.D.N.Y.2013), *aff'd sub nom.*, *Gortat v. Capala Bros., Inc.*, 568 Fed. Appx. 78 (2d Cir. 2014) (citations omitted)). *See also In re Vitamin C Antitrust Litig.*, 279 F.R.D. 90, 99 (E.D.N.Y. 2012) (recognizing that "the numerosity requirement 'imposes no absolute limitations and requires a case-by-case analysis of the facts. . .' though the presumption is generally forty members) (citations omitted).

Here, Defendants concede that they produced a list of 36 employees pursuant to the Stipulation entered in June of 2021. *See* Opp. at 7. The Stipulation of June 2021 required that Defendants' counsel furnish to Plaintiff's counsel a Microsoft Excel spreadsheet containing all "**current and former non-exempt and non-managerial employees"** employed at any time from December 29, 2017 to the present by Defendants. *See* ECF 19 (emphasis in original).[10] Moreover, the Stipulation required, among other things, that each employee's last known address and email address be provided. *Id.* Thus, per the case law stating that there is no "magic number" for class certification, this Court has the discretion to conclude that numerosity is satisfied based upon the fact that 36 employees (nearly 40) were already provided by Defendants. Additionally, as Plaintiffs' Mot. at 10-11 asserts, there is still the possibility that additional employees/potential class members may be found. *See also* Plaintiff's Reply at 5-6 arguing same.[11]

This Court is also not persuaded by Defendants' arguments against numerosity. First, Defendants argue that since "Defendants did not maintain the addresses of seven (7) employees because these employees worked for a brief period of time" on the list Defendants produced, these

---

[10] Again, the Court notes that the actual list of employees Defendants produced includes employees from as early as 2016, notwithstanding the year 2017 in the stipulation.

[11] Note, because Plaintiff's Reply document itself is not numbered, the Court has referred to the page numbering of the pdf file.

employees are unlikely to be found.  *See* Opp. at 8-9.  Hence, the implication is that the actual number of proposed Plaintiffs will be far below the presumption of forty (40) when subtracting seven (7) individuals from the 36 employees on the list.  *Id.*  Relatedly, Defendants further argue that: "[if] the Plaintiff believed that the list was deficient in terms of missing employees, it should have been raised earlier in the proceedings.  By seeking class certification in this case, at this stage, it appears that it is an attempt by the Plaintiff to seek substantive discovery."  *Id.* at 7.

This Court is certainly cognizant of Defendants' concerns and agrees that Plaintiff is not entitled to use the Rule 23 certification process as a fishing expedition for substantive discovery. However, the point still remains that Defendants produced a list of thirty-six (36) employees within the relevant period, totaling nearly forty (40) people.  Moreover, this Court also agrees with Plaintiff's Reply at 6 that: "Defendants provide no support, legal or otherwise, for the notion that *mere difficulty* in contacting class members has any bearing on the numerosity requirement." (emphasis added).  Indeed, this Court has not been able to find any such case law for that proposition either.  Finally, this Court also notes that Defendants have not subsequently disputed Plaintiff's contention in his Reply at 6 that Defendants have "provided [other] contact information for those employees without addresses."[12]  Hence, this Court concludes that numerosity is satisfied.

### 2. *Commonality*

This Court concludes that Plaintiff has not satisfied the commonality requirement. "Although some courts tend to merge Rule 23's commonality prong with the typicality prong, *see Marisol A.*, 126 F.3d at 376, the commonality requirement is distinct from typicality in that it 'tests

---

[12] To be clear, even if such contact information was *not* provided, this Court still concludes that numerosity is satisfied because Plaintiff's mere difficulty that *may* exist in locating certain prospective class members does not prohibit numerosity from being satisfied.

the definition of the class itself' rather than focusing on the relationship between the putative class representative and the other class members." *See In re Vitamin C Antitrust Litig.*, 279 F.R.D. at 99 (citing 5–23 James W. Moore et al., Moore's *Federal Practice* § 23.23[6] (3d ed. 2011)). "Under commonality, the class definition is tested to ensure that the class members' claims 'depend on a common contention [which is] of such a nature that it is capable of classwide resolution.'" *Id.* (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).

"Rule 23(a)(2), read literally, requires only that a class share common 'questions of law or fact..'" *Id.* at 99. "As the Supreme Court recently declared, however, what matters under the commonality requirement 'is not the raising of common questions—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation.'" *Id.* (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L.Rev. 97, 132 (2009)). "A single common question of law or fact may suffice to satisfy this requirement if the question is capable of giving rise to a common answer through a class action." *In re Vitamin C Antitrust Litig.*, 279 F.R.D. at 99 (citations omitted). More specifically, "[i]n wage cases, the commonality requirement is usually satisfied where the plaintiffs allege that defendants had a common policy or practice of unlawful labor practices." *See Zivkovic v. Laura Christy LLC*, 329 F.R.D. 61, 69 (S.D.N.Y. 2018) (quotations and citations omitted).

Here, Plaintiff argues that "there is a question of commonality among Plaintiff and Class members to each of the issues set forth below, because they were paid flat daily salaries that did not include extra pay for overtime or spread of time." *See* Plaintiff's Mot. at 11 (citing Li Aff. ¶¶ 8–12, 96–112). Specifically, Plaintiff argues that commonality exists with respect to four issues, which the Court will examine in turn.

(1) Failure to Pay Overtime Under NYLL

Plaintiff argues that Defendants failed to pay overtime to Plaintiff and the class members under the NYLL, meaning that "Plaintiff and the Class members did not receive a rate 1.5 times their regular rates for hours worked in excess of forty (40) hours a week." *See* Plaintiff's Mot. at 11-12 (citing Li Aff. ¶¶ 8–12, 96–112). The NYLL provides that "[a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate in the manner and methods provided" in the FLSA. *See* 12 N.Y.C.R.R. § 142-2.2.

Glaringly, Plaintiff's only citation for any evidence in support of this contention is Li Aff. ¶¶ 8–12; 96–112 noted above. *See* Plaintiff's Mot. at 11-12. However, upon the Court's review, these paragraphs fail to show virtually *any* evidence of commonality. First, ¶¶ 8–12 only discuss *Plaintiff's* overtime and not any other employees. *See, e.g. id.* at ¶ 12 ("At all relevant times, *I* was not paid overtime pay for overtime work.") (emphasis added). The closest paragraph regarding the overtime specifics among other class members is ¶ 96, which contains the conclusory statement that: "I know all the employees were paid according to daily wage rates. Employees' daily pay rates deprived them of time-and-a-half pay for overtime, and spread of time premium." The rest of the paragraphs Plaintiff cites (¶¶ 96-112) do not mention any further specific overtime information besides that individuals were paid at "daily wage rates." Moreover, the Li Aff. only mentions a handful of employees by name within ¶¶ 19-95, does not refer to employee last names in some cases, and also does not even *mention* the names of the overwhelming majority of the 36 employees from the list Defendants produced.

In addition to the above deficiencies, Defendants highlight that: "Plaintiff was a masseuse among two other masseuses, the rest of the Defendants workforce comprised of nail technicians. As a masseuse, Plaintiff *belonged to a different job classification, performing different job*

*functions*." Opp. at 9 (emphasis added).[13]   Defendants further argue that: "[w]hile the employees all worked at the same Nail Salon, masseuses were only a fraction of employees because the demand for the masseuses were significantly lower." *Id.*  Furthermore, the Affidavit of Sungjun An, dated July 6, 2023 ("Sungjun An Aff.") at ¶ 39, ECF 67, provides that: "During non-busy season, which is generally from September to April, the number of days that nail technicians work decrease.  Therefore, many of the nail technicians do/did not work more than 40 hours per week."  Finally, the Sungjun An Aff. at ¶ 40 provides that: "Some nail technicians never work more than 4 days per week, whereas some want to work only three days or 4 days."

Importantly, Plaintiff's Reply merely responds to the above by arguing that such points are "minor differences in the individual circumstances of class members."  *See* Reply at 7.  In fact, Plaintiff does not attempt to contest the point that many nail technicians do/did not work more than 40 hours per week.  Thus, when considering that Plaintiff did not even assert personal knowledge with respect to class members' overtime besides the conclusory sentence noted above in the Li Aff. ¶ 96 ("I know all the employees were paid according to daily wage rates.  Employees' daily pay rates deprived them of time-and-a-half pay for overtime, and spread of time premium."), *coupled with* the employee variations in hours worked and tasks performed noted above, this Court concludes that Plaintiff has not adequately addressed these deficiencies.  Thus, this Court concludes commonality is lacking for Plaintiff's overtime claims under the NYLL.

(2) Failure to Pay Spread of Hours Pay Under NYLL

Plaintiff argues that: "Plaintiff and Class members who worked in excess of 10 hours for a given workday are entitled to the spread of hour pay they did not receive from their employers.  Here, *Plaintiff's not received* the spread of hours pay." *See* Plaintiff's Mot. at 12 (citing Li Aff. ¶

---

[13] Notably, Plaintiff did not dispute this point in his Reply.

18) (emphasis added).[14]  "The 'spread of hours' provision of NYLL entitles employees to one additional hour of pay at the minimum hourly wage when the interval between the beginning and end of an employee's workday exceeds 10 hours."  *Id.* (citing N.Y. Lab. Law § 652).

Notably, Plaintiff's only citation for this contention is Li Aff. ¶ 18 noted above, which provides: "Throughout my employment, *I was not compensated for New York's 'spread of hours' premium for shifts that lasted longer than ten (10) hours at *my promised rate*.  From time to time, *I* worked a spread of hours greater than ten (10) hours one (1), two (2), and three (3) days per week." (emphasis added).  In other words, there is no statement at all about *any* of the other class members with respect to the "spread of hours" issue.  In fact, Plaintiff does not make any such statement covering specifics of the other class members in relation to the spread of hours issue throughout the entire Li Aff.  Thus, this Court finds that Plaintiff has failed to show commonality regarding the spread of hours pay issue under the NYLL as well.

(3) Failure to Provide Time or Hire Notice Under NYLL

Plaintiff argues that: "Plaintiff was not provided at his time of hire with a sheet to sign labeling the relevant information needed to satisfy the requirements under NYLL §195.1(a), nor was he provided with copies of the wage notices he signed later, nor were the wage notices he signed accurate."  *See* Plaintiff's Mot. at 12-13 (citing Li Aff. ¶ 13, *see also* Li Aff. Ex. 4).  The NYLL requires employers to provide written notice to their employees "containing the following information: the rate or rates of pay and basis thereof. . ."  N.Y. Lab. Law § 195-1(a).

Again, as with the other commonality issues discussed above, Plaintiff's only citations concern *his* alleged notice and *not* the other potential class members.  *See* Li Aff. ¶ 13 ("Over the course of my employment, *I was given* five (5) wage notices to sign (*see* Exhibit 4 hereto), but was

_____

[14] The phrase "Plaintiff's not received" is left verbatim from Plaintiff's Motion as another example of Plaintiff's confusing language when alleging commonality with respect to the class under Rule 23.

not permitted to keep any. . .").  Hence, this Court also concludes that Plaintiff has failed to show commonality with respect to the wage notices.[15]

### (4) Failure to Provide Accurate Paystubs Under NYLL

Plaintiff argues that: "Plaintiff and the Class members were just given an envelope with cash in it."  *See* Plaintiff's Mot. at 13 (citing Li Aff. ¶ 16).  Yet, the NYLL further requires that employers: "furnish each employee with a statement with every payment of wages. . ."  *See* N.Y. Lab. Law § 195-3; 198(1-d).

Again, Plaintiff's only cited paragraph, Li Aff. ¶ 16, does not concern *other* class members and merely provides: "Throughout *my employment*, I was not given a statement with my weekly payment reflecting my name; my employer's name, address and telephone number; my rate or rates of pay; any deductions made from my wages; any allowances claimed as part of the minimum wage; and *the my gross*[16] and net wages for each pay day."  Thus, this Court concludes that Plaintiff has failed to show commonality with respect to the issue of accurate paystubs under the NYLL.

Based upon the above analysis, this Court concludes that Plaintiff has failed to show commonality for Rule 23 certification.[17]

---

[15] Note, the heading in Plaintiff's Mot. at 12 for this issue is titled: Failure to Provide *Time or Hire* Notice under NYLL.  However, in the actual discussion, Plaintiff refers to the document as *wage notices*.  In any event, this Court's conclusion remains the same regardless of which term is used since the only paragraph Plaintiffs relies on in the Li Aff. does not show any commonality, and this Court's own review shows that commonality is lacking in the entire Li Aff. as well.  Relatedly, incorporating the above analysis, this Court also agrees with Defendant's Opp. at 10 that: "Plaintiff has failed to show that Defendants uniformly and in bad faith, consistently provided Plaintiff and the Class members with 'incorrect' wage notices."

[16] This phrase "the my gross" is intentionally quoted verbatim from Li Aff. ¶ 16 and provides yet another example of Plaintiff's confusing language when discussing commonality.

[17] Before moving on, this Court also needs to clarify this citation from Plaintiff made elsewhere in his Motion, which has some implications for commonality.  *See* Plaintiffs' Mot. at 7 (citing An Dep. 267:5–18 (employees are paid eight hours Monday to Friday*, no matter how many hours they actually work*) (emphasis added).  Upon reviewing An Dep. 267:5–18, this Court concludes that Plaintiff is misreading this deposition testimony in the preceding italicized portion, which is *Plaintiff's summary* of the testimony.  Specifically, An Dep. 267:5–18 states the following in relevant part: "Q. Let's keep this simple: Is it correct that employees, regardless of their full-time or part-time, regardless of the position that they had and that they would be paid eight hours for work on Monday, Tues, Wednesday, Thursday, Friday or Saturday?. . . A. That is correct."   The point is that An Dep. 267:5–18 does not contain the admission that Plaintiff implies, which is that employees worked *over* eight (8) hours but were only paid for eight (8) hours or less.  Rather, the surrounding deposition testimony is underscoring circumstances in which Defendant Sungjun An asserts

3. *Typicality*

This Court concludes that Plaintiff has also not satisfied the typicality requirement. "The typicality analysis focuses on whether the named plaintiff's interests align with the interests of the rest of the class." *See In re Vitamin C Antitrust Litig.*, 279 F.R.D. at 105 (citations omitted). "The purpose of this analysis is to ensure that, by prosecuting its own case, the named plaintiff simultaneously advances the interests of the absent class members." *Id.* (internal quotations and citations omitted). "The typicality criterion does not require complete symmetry between the class representative's claims and those of the absent class members." *Id.* (internal quotations and citations omitted). "Rather, the named plaintiff must simply raise claims that 'arise from the same course of events' as the class claims and make 'similar legal arguments to prove the defendant's liability.'" *Id.* (quoting *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993)).

Here, Plaintiff's argument for typicality is virtually identical to the commonality argument discussed above. *See* Plaintiff's Mot. at 13-14 ("As in the commonality requirement, the named Plaintiff meets the typicality requirement through their claim that they performed similar work for Defendants and that they, together with the other members of the putative class, were never compensated by Defendants for overtime work as a result of Defendants' common policy. . .."). Therefore, this Court reincorporates its commonality analysis again here and concludes that Plaintiff's argument for typicality likewise fails.

---

that many employees *did not even work* forty (40) hours per week. *See, e.g.*, An Dep. 266:16-21 ("A. We have employees that work only three days a week or four days a week. So, obviously, *they would not be working 40 hours per week*. Also, on Sundays, we open from 10:00 a.m. until 6:00 p.m. So, we are open for eight hours, and, again on Sunday.") (emphasis added). Most importantly, Defendant Sungjun An never uses the phrase that Plaintiff does in his Motion: "no matter how many hours they actually work."

Before moving on, however, it is necessary to also address a related point from Plaintiff's Reply regarding Plaintiff's alleged personal knowledge that impacts the typicality analysis. Specifically, Plaintiff's Reply at 7-8 asserts:

> "Regarding typicality, Defendants also argue that Plaintiff had 'no personal knowledge as to the pay practices of the nail technicians, their schedules and the tips that they received.' Ex. 1 p.11. However, this is not the case, as Plaintiff, through sworn affidavit, states 'I have personal knowledge of the matters stated below' *and proceeds to provide information regarding pay policies, tip policies, and schedules of all employees, including nail technicians*." (citing Li Aff. ¶¶ 2, 19-112) (emphasis added)[18]

After reviewing the Li Aff. in its entirety, this Court concludes that Plaintiff's statement about the Li Aff. in relation to Plaintiff's personal knowledge of the italicized subjects above is incorrect. While it is not necessary for the Court to discuss the specifics of each paragraph in Plaintiff's lengthy citation to Li Aff. ¶¶ 19-112 (i.e. virtually the *entire* Li Aff.), a few points show how the Li Aff. itself highlights the limits of Plaintiff's personal knowledge regarding the other class members.

First, Li Aff. ¶¶ 19-112 only even mentions 13 employees in total (far below the alleged 36 class members), and many of the employees listed below are not even named: ¶¶ 19-21 (Nail Stylist, Lynn, Li); ¶¶ 22-28 (Driver and Masseur Michael); ¶¶ 29-34 (Driver and Masseur Andy); ¶¶ 35-41 (Nail Stylist, Cindy); ¶¶ 42-48 (Nail Stylist, Spanish 1); ¶¶ 49-55 (Nail Stylist, Spanish 2); ¶¶ 56-62 (Nail Stylist, Korean 1); ¶¶ 63-66 (Nail Stylist and Manager, Korean 2); ¶¶ 67-72 (Nail Stylist and Manager, Chinese 1); ¶¶ 73-77 (Nail Stylist, Spanish 3); ¶¶ 78-81 (Nail Stylist, Spanish 4); ¶¶ 82-88 (Nail Stylist, Allaico Marichuy); ¶¶ 89-95 (Nail Stylist, Maria).[19]

---

[18] Plaintiff's Reply at 8 erroneously cites to Li Aff. ¶ 1 regarding Plaintiff's personal knowledge, but the correct citation for this paragraph is Li Aff. ¶ 2 noted above.

[19] Paragraphs 96-112 in Plaintiff's cited range from the Li Aff. noted above do not mention any additional employees besides the individuals mentioned in the above discussion.

Second, contrary to the implication of Plaintiff's contention about broad personal knowledge in Li Aff. ¶ 2, Plaintiff either later concedes *not* having such knowledge or omits key information for the specific employees discussed.  Again, this is not to say that Plaintiff lacks *all* personal knowledge about these employees, but several representative examples below further undermine Plaintiff's alleged personal knowledge for typicality:

- ¶ 21 (Nail Stylist, Lynn, Li) ("LYNN LI was only discussed with friends.  *I do not remember her."*) (emphasis added).

- ¶ 41 (Nail Stylist, Cindy) ("CINDY worked four (4) to five (5) days a week"). **Notably, Plaintiff mentions no personal knowledge of Nail Stylist Cindy's hours.**  The same is true for other employees such as Nail Stylist, Spanish 1 (¶ 48) and Nail Stylist, Spanish 2 (¶ 55).

- ¶¶ 63-66 (Nail Stylist and Manager, Korean 2)- Plaintiff mentions *nothing* about this employee's schedule.

- ¶¶ 73-77 (Nail Stylist, Spanish 3)- Plaintiff mentions *nothing* about this employee's schedule.

- ¶¶ 89-95 (Nail Stylist, Maria)- Plaintiff mentions *nothing* about this employee's schedule.

For these reasons, this Court concludes that Plaintiff has also failed to show typicality under Rule 23.

### 4.  Adequacy of Representation

This Court concludes that Plaintiff has not satisfied adequacy of representation.  "The adequacy requirement focuses on the fitness of purported class representatives to competently discharge the responsibility of litigating the case on behalf of absent class members. Under this prong of Rule 23(a), a court must ensure that the putative representatives 'possess the *same interests and suffer the same injuries as the class members*.'"  *In re Vitamin C Antitrust Litig.*, 279 F.R.D. at 99–100 (quoting *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 249 (2d Cir. 2011)) (emphasis added).  Here, neither Plaintiff nor Defendants discuss adequacy of

19

representation in their briefing.   However, this Court reincorporates its conclusions for commonality and typicality discussed above and further concludes that there can be no adequate representation here since there is not sufficient commonality or typicality for class certification to begin with.   Hence, adequacy of representation is lacking as well.

    *5.   Ascertainability*

    Though it does not impact the above analysis, this Court concludes that the class would be ascertainable based upon the time period provided by Plaintiff if the other above deficiencies did not exist.   "Although Rule 23(a) contains no express requirement regarding ascertainability, courts within the Second Circuit have held that the rule impliedly prohibits certification of a class that is not identifiable by reference to objective criteria."   *See In re Vitamin C Antitrust Litig*., 279 F.R.D. at 116 (citing *Friedman–Katz v. Lindt & Sprungli (USA), Inc.*, 270 F.R.D. 150, 154 (S.D.N.Y.2010)).   Ascertainability requires that it is "administratively feasible for a court to determine whether a particular individual is a member of the class [and the] Court must be able to make this determination without having to answer numerous individualized fact-intensive questions."   *See Fogarazzo v. Lehman Bros.*, 232 F.R.D. 176, 181 (S.D.N.Y. 2005).

    This parties' arguments regarding ascertainability boil down to the applicable statute of limitations.   Plaintiff argues that: "Plaintiff's proposed class definition, which covers a putative class of 'All who were employed or are currently employed by Defendants, other than Defendants themselves, during the six years immediately preceding the intuition of this action, i.e., from December 29, 2014 through date the decision of this motion,' is clearly ascertainable, as it proposes a single, definite, and non-arbitrary period."   *See* Plaintiff's Reply. at 9.   The applicable statute of limitations for claims under the NYLL is six (6) years.   *See, e.g.*, *Sanchez v. Ms. Wine Shop Inc.*, 643 F. Supp. 3d 355, 369 n.2 (E.D.N.Y. 2022).   Further recall that Plaintiff has defined the class

as "All who were employed or are currently employed by Defendants, other than Defendants themselves, during the six years immediately preceding the intuition of this action, i.e., from December 29, 2014 through date the decision of this motion."

The Court notes Defendants' objection in their Opp. at 11 that: "Plaintiff does not put forth the rationale behind his assertion that the Class should extend to the present and it is entirely improper."  However, even assuming that extending the class definition to "the present" or "the date of decision of this motion" is improper, Defendants' Opp. at 11 erroneously uses the *FLSA* statute of limitations for willful violations, which is three years, and *ignores* the NYLL statute of limitations of six (6) years.  *See Sanchez*, 643 F. Supp. 3d at 369 ("The FLSA generally provides for a two-year statute of limitations for enforcement of its provisions, or a three-year statute for 'willful' violations.") (quoting 29 U.S.C. § 255(a)).  Under the proper NYLL six-year statute of limitations, since Plaintiff's original Complaint was filed on December 29, 2020, six years prior would be December 29, 2014 (the date Plaintiff proposes) covering the employment period of the 36 individuals on Defendant's list.  *See* ECF 69-5 [Exhibit Compiled List of Employees since 2016].  Again, however, even if the statute of limitations is proper, that does not cure the commonality and typicality deficiencies discussed above.

*B.  Rule 23(b)*

While the Court's above conclusions regarding commonality and typicality are dispositive to the class certification analysis, this Court will briefly address predominance and superiority under Rule 23(b) for comprehensiveness.

*1.  Predominance*

Given the Court's above conclusions, this Court further concludes that predominance is also not satisfied.  The "predominance" requirement of Rule 23(b)(3) "tests whether the proposed

[class is] sufficiently cohesive to warrant adjudication by representation." *In re Vitamin C Antitrust Litig.*, 279 F.R.D. at 109 (quoting *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). This criterion is satisfied if "resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Id.* (quoting *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010)).

Plaintiff's Mot. at 10-11 argues that, *inter alia*, the following six common questions of law and fact exist and predominate:

    (a)  Whether Defendants are joint employers who are jointly liable for violations of the NYLL and Wage Order;

    (b)  Whether Defendants paid Plaintiff and Class members the minimum wage for all hours worked;

    (c)  Whether Defendants paid Plaintiff and Class members overtime at a rate of 1.5 times their regular hourly rates for all hours worked in excess of 40 hours each week;

    (d)  Whether Defendants furnished Plaintiff and Class members wage notices compliant with Section 195.1 of the NYLL when they were hired;

    (e)  Whether Defendants furnished Plaintiff and Class members with wage statements compliant with Section 195.3 of the NYLL with each payment of wages; and

    (f)  At what common rate, or rates subject to common method of calculation, were and are Defendants required to pay Plaintiff and the Class members for their work.

For all of Plaintiff's above questions, this Court incorporates its commonality and typicality discussion above and concludes that, as a corollary, predominance is not satisfied either. Moreover, besides the commonality and typicality discussion *supra* concerning Plaintiff's lack of personal knowledge, Defendants' Opp. at 12-13 provides additional justification in showing why predominance is not satisfied here.

First, "Defendant Sungjun An in his affidavit states that the employees did not, all work the same number of hours, and each worked a different schedule. Some of the employees, out of their own desire and volume of the business did not work in excess of 40 hours per week, resulting in no overtime compensation obligation on the part of the Defendants." *See* Defendants' Opp. at 12 (citing Sungjun An Aff. ¶¶ 39-42.).

Second, "with respect to the tips earned by the nail technicians and the masseuses, and whether the sufficient amount of tips were earned for each category should be evaluated differently." *Id.* (citing Sungjun An's Aff. ¶¶ 27-29). Relatedly, Defendants argue that "[t]he distinctions in Defendant Sungjun An's testimony between the nail technicians who performed 'big jobs' and the 'small jobs', let alone the masseuse and the nail technicians should preclude this Court from making a sweeping determination as to all employees should fall into the Class defined by the Plaintiff." *Id.* at 12-13.

After reviewing the above citations and the parties' arguments, this Court agrees with Defendants that the above points further bolster this Court's conclusion that predominance is not satisfied. Given Plaintiff's lack of personal knowledge regarding the 36 employees at issue, *plus* differences in pay and tip amounts outlined by the Sungjun An Affidavit, it is apparent that predominance is lacking and that certification should be denied under Rule 23 for this reason as well.[20]

### 2. Superiority

This Court concludes that superiority would be satisfied if commonality and typicality were present. "Rule 23(b)(3)'s 'superiority' requirement is frequently satisfied when it would be prohibitively expensive for class members with small claims to proceed individually." *See In re*

---

[20] For the same reasons discussed *supra* regarding commonality and typicality, this Court disagrees with Plaintiff's Reply at 11 that the differences regarding the above questions amongst potential class members are merely "minor."

*Vitamin C Antitrust Litig.*, 279 F.R.D. at 109 (citing *Seijas v. Republic of Argentina*, 606 F.3d 53, 58 (2d Cir. 2010)).

Defendants' primary objection here in their Opp. at 13 is that: "While wage claims for overtime under the FLSA and NYLL generally meet the superiority requirement under FRCP 23(b)(3), the presence of ethnic discrimination claims on behalf of the Plaintiff makes [Plaintiff's action] inappropriate for class certification. Plaintiff, by bringing his racial discrimination claim, he is pitting those employees who are ethnic Chinese and those employees who are ethnic Koreans but were raised in China against those employees who are ethnic Koreans." However, Plaintiff's Reply at 11-12 counters that: "Plaintiff and putative class members, *regardless of ethnicity*, were all subject to Defendants' common policy of failure to pay overtime and spread of hours, as well as failure to provide proper paystub and time-of-hire notice as required under the NYLL." (emphasis added). Had commonality and typicality been satisfied, there would be no question that a class action is the superior means of litigation here. However, since commonality and typicality are lacking, superiority does not alter this Court's recommendation that certification should be denied.[21]

Based upon the above discussion, this Court recommends that Plaintiff's Motion for Class Certification under Rule 23 be denied in its entirety.[22]

---

[21] Given this Court's commonality and typicality determinations discussed *supra*, this Court also need not consider Defendants' argument in their Opp. at 13 that: "Plaintiff counsel's gamesmanship is even more clearly displayed in their attempt to extend the class members to the present when there is no evidence that the Defendants are in violation of any of the laws cited in the Complaint."

[22] To the extent Defendants' Opp. at 14 argues that "Plaintiff fails to satisfy Rule 23(c)(1) by delaying in seeking a Rule 23 class," this Court does not find Defendants' argument persuasive. This Court agrees with Plaintiff's Reply at 4 that "Plaintiff did not engage in any unreasonable delay in moving for class certification" because discovery did not close until December 15, 2022 and Plaintiff submitted a letter requesting a Pre-Motion Conference for class certification on January 25, 2023. *See* ECF 54-55. Separately, this Court also concludes that it is unnecessary to discuss Defendants' "Revisions to the Proposed Notice," *see* Opp. at 14, since this Court recommends that Plaintiff's Motion for Certification be denied.

## V.    CONCLUSION

For the foregoing reasons, the undersigned respectfully recommends that Plaintiff's Motion for Class Certification under Rule 23 be denied in its entirety.

## VI.    OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections.  Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals.  *See Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018); *McConnell v. ABC-Amega, Inc.*, 338 F. App'x 24, 26 (2d Cir. 2009); *Tavarez v. Berryhill*, No. 15-CV-5141 (CS) (LMS), 2019 WL 1965832, at *30 (S.D.N.Y. May 1, 2019); *see also Thomas v. Arn*, 474 U.S. 140 (1985).


**SO ORDERED.**


                                                                     /s/ Steven Tiscione
                                                                     Steven Tiscione
                                                                     United States Magistrate Judge
                                                                     Eastern District of New York


Dated: Central Islip, New York
January 17, 2024