United States District Court
Eastern District of New York

-----------------------------------X

DEQUAN LI,
       *Plaintiff*,

        - against -

NY CAPRI NAILS & SPA INC
    d/b/a Capri Nails & Spa;

SUNGJUN AN
    a/k/a Sung Jun An
    a/k/a Eric An, and

HEEKYOUNG AN
       a/k/a Heek Young An,

     *Defendants*.

-----------------------------------X

**Order**

No. 20-cv-6296 (KAM)

**Kiyo A. Matsumoto, United States District Judge:**

        Pending before the Court is a joint motion, (ECF No. 102), seeking court approval of a settlement to resolve plaintiff Dequan Li's claims under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") against his former employers NY Capri Nails & Spa, Inc., Sungjun An, and Heekyoung An (together "Defendants"). For the reasons explained below, this motion is respectfully DENIED WITHOUT PREJUDICE because the proposed attorney's fees are unreasonable.

<u>**BACKGROUND**</u>

        Mr. Li brought this action on December 29, 2020 against Defendants alleging that Defendants violated the FLSA and NYLL by

failing to pay Mr. Li minimum wage and properly compensate him for hours worked overtime. (ECF No. 1 at 2.) On March 15, 2021, Mr. Li amended his complaint to add claims related to allegations that Defendants discriminated against him based on his national origin by paying him less than other employees and terminating him. (ECF No. 8 at 3, 10-13.) On October 15, 2024, Mr. Li and Defendants stipulated to the dismissal of Mr. Li's claims under the NYCHRL. (ECF No. 98.)

On October 18, 2024, the parties stipulated to a settlement of the remaining claims, (ECF No. 100), and submitted a joint motion seeking approval of the settlement, (ECF No. 102). Pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), Mr. Li's counsel filed a memorandum in support of the joint motion for settlement approval. (ECF No. 104.) The proposed settlement provides for the following allocation of recovered funds:

| Settlement Amount | $167,500 |
|---|---|
| Costs | $6,100 |
| **Net Settlement Amount** | **$161,400** |
| Mr. Li's recovery | $75,400.02 (46.72%) |
| Attorney's fees | $85,999.98 (53.28%) |

(ECF No. 105-1 at 2.) In summary, the parties seek approval of a settlement in which the attorney's fees constitute over 53% of the settlement amount exclusive of costs.

2

In this action, Mr. Li is represented by Troy Law, PLLC ("Troy Law"). (ECF No. 105-2.) The Legal Services Agreement between Mr. Li and Troy Law provides that the attorney's fees under the agreement will be one-third of the net recovery, and "[n]otwithstanding, the court may additionally award [Troy Law] for attorneys' fees and costs." (ECF No. 105-2 at 2.)

## LEGAL STANDARD

"[The Second Circuit] has held that parties cannot privately settle FLSA claims with a stipulated dismissal with prejudice under Federal Rule of Civil Procedure 41 absent the approval of the district court or the Department of Labor."[1] *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 599 (2d Cir. 2020) (citing *Cheeks*,

---

[1] As the *Fisher* majority opinion noted, "[a]nother panel of th[e] Court ... held" in *Mei Xing Yu v. Hasaki Rest., Inc.*, 944 F.3d 395, 411 (2d Cir. 2019) "that *Cheeks* does not extend to offers of judgment entered under Federal Rule of Civil Procedure 68(a)." *Fisher*, 948 F.3d 593, 600 n.5 (2d Cir. 2020) (emphasis added). The Court observes that *Mei Xing Yu* and the subsequent reliance on Rule 68(a) offers of judgment in FLSA cases have been subject to substantial criticism by a number of judges. For example, Judge Calabresi, in dissent, expressed grave doubt that *Mei Xing Yu* "can — or will — withstand Supreme Court scrutiny." 944 F.3d at 427 (Calabresi, J., dissenting); *see also Ballo v. R & J Auto. LLC*, No. 24-cv-1627 (VSB), 2025 WL 485988, at *1 (S.D.N.Y. Feb. 12, 2025) ("*Mei Xing Yu* creates outcomes inconsistent with the spirit and purpose of *Cheeks* by forcing courts to enter judgments that would not survive *Cheeks* review.") (collecting cases); *De Jesus Torres v. HWF Realty Mgmt., Inc.*, No. 18-cv-994 (PAC), 2020 WL 995861, at *2 (S.D.N.Y. Mar. 2, 2020) (opining that *Mei Xing Yu* "will create a real potential for abuse" and "paves the way for parties to simply use Rule 68(a) as an end run to accomplish what *Cheeks* forbade.")(citing *Mei Xing Yu*, 944 F.3d at 425-26 (Calabresi, J., dissenting)) (internal quotations omitted). *Mei Xing Yu* did not, however, eliminate the possibility of judicial oversight altogether. *First*, as noted in the majority opinion in *Mei Xing Yu*, "the fact that a Rule 68(a) stipulated judgment must be entered by the clerk of the court does not mean that the judgment cannot later be challenged as deficient under the common law of contract or under Rule 60(b) for fraud, misrepresentation, misconduct, or any other reason that justifies relief." 944 F.3d at 413 (internal quotations omitted). *Second*, "[a] federal court may exercise its supervisory power to ensure that fees are in conformance with codes of ethics and professional responsibility." *In re Zyprexa Prods. Liab. Litig.*, 424 F. Supp. 2d 488, 492 (E.D.N.Y. 2006).

796 F.3d at 206). "As a result, district courts in this Circuit routinely review FLSA settlements for fairness before approving any stipulated dismissal." *Id.* at 599-600. "[I]f attorneys' fees and costs are provided for in the settlement, district courts will also evaluate the reasonableness of the fees and costs." *Id.* at 600. Accordingly, when attorney's fees and costs are included in the proposed settlement, the Court must make two separate findings. *First*, as discussed in Part I below, the Court must ascertain the fairness of the settlement. *Second*, as discussed in Part II below, the Court must ascertain the reasonableness of the attorney's fees and costs.

## I.    Fairness of Settlement Analysis

The fairness of the settlement must be evaluated under the totality of the circumstances, inclusive of the following factors: "(1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion." *Fisher*, 948 F.3d at 600 (quoting *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335-36 (S.D.N.Y. 2012)). These factors, taken as a whole, guide

courts in determining whether the plaintiff's ultimate recovery amount is fair.

## II.  Reasonableness of Attorney's Fees

The second analysis the Court must undertake is the reasonableness of the proposed attorney's fees.  "The district court retains discretion to determine what constitutes a reasonable fee." *Millea v. Metro-North Railroad Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (citation modified).  Courts have historically applied two methods to analyze the reasonableness of attorney's fees in FLSA cases: (i) the lodestar method, and (ii) the percentage-of-recovery method.  "Both [the Second Circuit] and the Supreme Court have held that the lodestar — the product of a reasonable hourly rate and the reasonable number of hours required by the case — creates a presumptively reasonable fee." *Id.* (internal quotations omitted).  The Second Circuit has instructed that the second method – a percentage-of-recovery or proportionality analysis – "may be relevant" only "in some cases." *Fisher*, 948 F.3d at 603 (emphasis added).  Applying the Second Circuit's holdings in *Millea* and *Fisher*, the district court must assume the lodestar calculation is "presumptively reasonable" and may, "in some cases," consider the percentage-of-recovery method as a non-dispositive factor.  Below, the Court identifies the legal standards applicable to the lodestar method (Part II.A) and the percentage-of-recovery method (Part II.B).

**A.    The Lodestar Method**

"While the lodestar is not always conclusive, its presumptive reasonability means that, absent extraordinary circumstances," courts must "calculate it as a starting point." *Millea*, 658 F.3d at 166.  "A detailed explanation of the lodestar calculation is unnecessary, but compliance with the Supreme Court's directive that fee award calculations be objective and reviewable, implies the district court should at least provide the number of hours and hourly rate it used to produce the lodestar figure." *Id.* at 166-67 (internal quotations omitted).

**1.    Reasonable Hourly Rate**

A reasonable hourly rate is the first of two figures required to calculate the appropriate lodestar figure. "[C]onsiderations concerning the quality of a prevailing party's counsel's representation normally are reflected in the reasonable hourly rate used to calculate the lodestar initially." *Id*. at 168.  "[T]he burden is on the fee applicant to produce satisfactory evidence — in addition to the attorney's own affidavits — that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).  "The presumptively reasonable fee boils down to what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the

case effectively." *Simmons v. New York City Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (internal quotations omitted).

### 2.    **Reasonable Hours**

A reasonable number of hours worked is the second of two figures required to calculate the appropriate lodestar figure. "In determining how much attorney time should be compensated, the court initially looks to the amount of time spent on each category of tasks, as reflected in contemporaneous time records." *Gonzalez v. Scalinatella, Inc.*, 112 F. Supp. 3d 5, 29 (S.D.N.Y. 2015). "In calculating reasonable hours, the essential consideration is whether a reasonable attorney would have expended similar hours in pursuit of the case." *Id*. "If the court finds that some of the time spent was not reasonably necessary to the outcome, it should reduce the time for which compensation is awarded." *Id.* "In reducing a claim for time spent, the court may use a percentage deduction as a practical means of trimming fat from a fee application." *Id.* at 30 (internal quotations omitted).

### 3.    **Limitations on Lodestar Adjustments**

"A district court may adjust the lodestar when it does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Millea*, 658 F.3d at 167 (internal quotations omitted). As discussed below, however, the Second Circuit in *Millea* curtailed the discretion of judges to

make adjustments after the appropriate, presumptively reasonable lodestar figure is calculated.

After the appropriate lodestar figure is calculated, "[a] district court may adjust the lodestar when it does not adequately take into account a factor that may properly be considered in determining a reasonable fee" – but "such adjustments are appropriate only in rare circumstances, because the lodestar figure already includes most, if not all, of the relevant factors constituting a reasonable attorney's fee." *Id.* (citation modified). *Millea* identified several impermissible lodestar adjustments that courts must be careful to avoid. Specifically, courts generally may <u>not</u> adjust the lodestar based on: (1) "the novelty and complexity of a case ... because they are already included in the lodestar calculation itself, being fully reflected in the number of billable hours recorded by counsel"; (2) the "public policy significance" of claims in a case; (3) time "spent on claims wholly ineligible for fee-shifting;" (4) a finding that the plaintiff's success on a nonfrivolous claim was *de minimis*; (5) "the quality of an attorney's performance ... because considerations concerning the quality of a prevailing party's counsel's representation normally are reflected in the reasonable hourly rate used to calculate the lodestar initially." *Id.* at 167-68 (internal quotations omitted). Instead of adjusting the lodestar amount after it is calculated, the Second Circuit

8

instructs that generally "such adjustments should be made when calculating the original lodestar figure." *Id.* at 168.

## B.    The Percentage-of-Recovery Method

Before *Fisher*, district courts placed significant emphasis on the proportionality of attorney's fees relative to the total recovery and "typically approve[d] attorney's fees that range between 30 and 33%." *Thornhill v. CVS Pharmacy, Inc.*, No. 13-cv-5507 JMF, 2014 WL 1100135, at *3 (S.D.N.Y. Mar. 20, 2014) (collecting cases); *Fisher*, 948 F.3d at 602 n.8 (collecting pre-*Fisher* cases showing that "district courts in FLSA actions in this Circuit routinely appl[ied] a proportionality limit on attorneys' fees in FLSA actions").

In *Fisher*, however, the Second Circuit panel unanimously rejected the previously-common practice of relying on percentage-of-recovery calculations to analyze the reasonableness of attorney's fees.  The Second Circuit held that "there is no explicit limit on attorneys' fees in FLSA actions and district courts should not, in effect and practice, implement such a limit." 948 F.3d at 603.  The Second Circuit questioned the wisdom of even considering percentage-of-recovery as part of the standard analysis of attorney's fees and instead held that only "in <u>some</u> cases" "the proportion of fees <u>may</u> be relevant in considering the reasonableness of an award." *Id.* (emphasis added).  Moreover, the Second Circuit specifically noted that, "[i]n most FLSA cases, it

9

does <u>not</u> make sense to limit fees to 33% of the total settlement." *Id*. (emphasis added).  In *Fisher* itself, the Second Circuit held that a split of $23,000 to the law firm for attorney's fees and costs and $2,000 to the plaintiff was not *per se* unreasonable because "the reasonableness of the fees does not turn on any explicit percentage cap."  948 F.3d at 606.

As the Second Circuit seemed to acknowledge in *Fisher*, its rejection of a proportionality limit was a sea change from district courts' existing practice. *See Fisher*, 948 F.3d at 602 (recognizing that, pre-*Fisher*, "district courts in FLSA actions in this Circuit routinely appl[ied] a proportionality limit on attorneys' fees in FLSA actions"); *id.* at n.8 (collecting cases). Although use of proportionality analysis by courts in reviewing attorney's fees in FLSA settlements persists to varying degrees,[2] the Court reads *Fisher* to mandate that any such analysis, if

_____

[2] Notwithstanding *Fisher*, at least some district courts have continued the practice of considering proportionality when evaluating attorney's fees in FLSA cases. *See, e.g.*, *Minter v. Hess Corp.*, No. 22-cv-1538 (VSB), 2024 WL 4604533, at *2 (S.D.N.Y. Oct. 28, 2024) ("[C]ourts in this District have declined to award fees constituting more than one-third of the total settlement amount in FLSA actions unless the parties can identify special circumstances that might justify a fee exceeding the presumptive one-third ceiling.") (internal quotations omitted); *Huang v. Sunstone Pathology Servs. P.C.*, No. 2:23-cv-05420 (JMW), 2024 WL 4904160, at *7 (E.D.N.Y. Nov. 27, 2024) ("Plaintiff's Counsel's requested fee is approximately 45% of the total settlement amount, a percentage far higher than what is ordinarily considered acceptable in this Circuit."); *Intal v. Erie Agustin, M.D. Primary Care, P.C.*, No. 18-cv-03196 (SJ) (JRC), 2022 WL 892084, at *4 (E.D.N.Y. Jan. 27, 2022), *report and recommendation adopted,* 2022 WL 889041 (E.D.N.Y. Mar. 25, 2022) ("[C]ourts in this Circuit have found an award representing one third of the settlement amount to be reasonable"); *Hawkins v. Hagler*, No. 21-cv-8404, 2025 WL 1024522, at *3 (S.D.N.Y. Apr. 7, 2025) ("[C]ourts in this Circuit do not typically award fees more than one-third of the total settlement amount in an FLSA action, unless there are 'special circumstances that might justify a fee exceeding the presumptive one-third ceiling.'") (quoting *Minter*, 2024 WL 4604533, at *2).

undertaken at all, must be given only modest, non-dispositive weight in determinations of reasonableness.

## III. Limitations on the Court's Oversight of FLSA Settlements

"If a district court concludes ... that a proposed settlement is unreasonable in whole or in part, the court cannot simply rewrite the agreement -- it must reject the agreement or give the parties an opportunity to revise it." *Fisher*, 948 F.3d at 605. "In its discretion, a district court may suggest – as it does in an order of additur or remittitur – an amount of attorneys' fees and costs it would find reasonable under the circumstances." *Id.*

## DISCUSSION

Having reviewed the applicable legal standards, the Court considers whether the parties' proposed settlement is fair to the parties (Part I) and whether the proposed attorney's fees and costs are reasonable (Part II). For the reasons explained below, the Court finds that the proposed settlement is generally fair but that the proposed attorney's fees are unreasonable.

## I.    Fairness of Overall Settlement

"When assessing a proposed settlement for fairness, there is generally a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Cronk v. Hudson Valley Roofing & Sheetmetal, Inc.*,

538 F. Supp. 3d 310, 315 (S.D.N.Y. 2021) (collecting cases). Upon reviewing the proposed settlement, the Court finds no basis to disturb the presumption that the parties' settlement in the instant case is generally fair. Both the contemplated total settlement amount of $167,500 and Mr. Li's contemplated recovery amount of $75,400.02 are both figures that fall within a reasonable range of recovery, especially considering the parties' respective litigation risks and the substantial attorney's fees and costs associated with the prolonged litigation in this case. Further, the contemplated installment plan, (ECF No. 105-1 at 2-9), is a reasonable method of structuring payments to mitigate the cash flow impacts on Defendants.

        As previously discussed, courts look to a non-exhaustive set of factors outlined in *Fisher* and *Wolinsky* to consider the fairness of an FLSA settlement. The Court first considers "the plaintiff's range of possible recovery" and "the seriousness of the litigation risks faced by the parties." *Fisher*, 948 F.3d at 600 (quoting *Wolinsky*, 900 F. Supp. 2d at 335-36). Here, Mr. Li's recovery appears significant:

> Plaintiff's recovery under the Agreement of $73,400.00[3] represents a 365.75% recovery of Plaintiff's $20,123.50 total potential recovery under the FLSA; a 102.50%

---

[3] The memorandum in support of the instant motion, (ECF No. 104), appears to include an error as to Mr. Li's recovery amount. The parties' settlement agreement states that Mr. Li's recovery is $75,400.02, (ECF No. 105-1 at 2), but the filed memorandum incorrectly uses the $73,400 figure, (ECF No. 104 at 7). In its analysis, the Court relies upon the $75,400.02 figure provided in the parties' settlement agreement.

> recovery of Plaintiff's $71,608.50 potential recovery under the NYLL (before prejudgment interest); and a 41.07% recovery of Plaintiff's $178,703.64 potential recovery of the sum of unpaid wages and liquidated damages under the NYLL, and front pay under Title VII.

(ECF No. 104 at 7.)  Although the overall settlement may appear modest when viewed in light of possible nonpecuniary and punitive damages, "[a]wards of punitive damages are by nature speculative, arbitrary approximations" and "[n]o objective standard exists that justifies the award of one amount, as opposed to another, to punish a tortfeasor appropriately for his misconduct." *Payne v. Jones*, 711 F.3d 85, 93 (2d Cir. 2013).  As Mr. Li concedes, "[w]hat a jury might have awarded to Plaintiff for nonpecuniary losses, including emotional damages, and whether it would have awarded punitive damages, are somewhat imponderable."  (ECF No. 104 at 7 n.1.)

The remaining factors identified in *Fisher* and *Wolinsky* also support approval of the settlement.  This case is now in its fifth year and settlement would "enable the parties to avoid anticipated burdens and expenses" by prolonging the litigation even further.  *Fisher*, 948 F.3d at 600 (quoting *Wolinsky*, 900 F. Supp. 2d at 335-36).  The Court finds that the contemplated settlement agreement in this hard-fought litigation "is the product of arm's-length bargaining between experienced counsel" and not "fraud or collusion," as evidenced by the parties agreeing to settle the case only three days before jury selection and trial

13

were to begin.  (*See* ECF No. 100; October 18, 2024 Docket Entries.)
In summary, the Court finds the proposed settlement to be fair.

## II.  Reasonableness of Attorney's Fees and Costs

Although the overall settlement is fair, the Court must evaluate the reasonableness of the contemplated attorney's fees and costs.  The Court first considers the reasonableness of the proposed attorney's fees (Part II.A) and then the proposed costs (Part II.B).

### A.  Attorney's Fees

Consistent with the Second Circuit's guidance in *Fisher*, the Court evaluates the reasonableness of attorney's fees by calculating the appropriate lodestar figure rather than relying on the percentage-of-recovery method.  Although the proposed attorney's fees in this case are higher than usual (approximately 53.28% of the settlement amount exclusive of costs), the Second Circuit has emphasized that "the reasonableness of the fees does not turn on any explicit percentage cap."  948 F.3d at 606. Therefore, the Court relies on the lodestar method to calculate reasonable attorney's fees.

### 1.  Hours Worked

The Court's task of calculating the appropriate lodestar figure is made substantially more difficult by Troy Law's unreliable billing practices, which persist despite numerous admonishments by courts.  *See, e.g.*, *Wang v. XBB, Inc.*, No. 18-

14

cv-7341 (PKC)(ST), 2023 WL 2614143, at *8 (E.D.N.Y. Mar. 23, 2023) ("Troy Law has been reprimanded numerous times for its billing practices, and some courts have specifically noted that further infractions could lead to sanctions"). As discussed below, the provided invoice is riddled with questionable billing entries that are difficult to identify and disaggregate from normal and appropriate entries. As other courts have noted, "the mere existence of even a few inconsistencies and questionable billing entries renders the entire record suspect." *Zang v. Daxi Sichuan, Inc.*, No. 18-cv-06910 (DG)(SJB), 2023 WL 2305934, at *8 (E.D.N.Y. Mar. 1, 2023) (internal quotations omitted). Accordingly, the Court cannot credit the $93,813.50 lodestar figure provided by Troy Law. (*See* ECF No. 105-3 at 11.)

Though the Court will not, at this juncture, undertake a line-by-line audit of 12 pages of billing entries, questionable entries are evident from the first page alone. For example, one of John Troy's billing entries on December 1, 2020 states that he spent 0.90 hours to "Prepare and Sign Retainer with Client(s)," (ECF No. 105-3 at 1), but the retainer agreement filed by Troy Law, (ECF No. 105-2), shows a templated, fill-in-the-blank retainer agreement that (i) has no dates, (ii) has no initials, and (iii) is not signed by Mr. Troy. The Court cannot credit Mr. Troy's billing entry and is left without answers as to why Troy

Law would submit to the Court a retainer agreement that is undated and unsigned by any representative of the law firm.

In another example, Mr. Schweitzer's billing entry on December 23, 2020 states that he spent 0.75 hours on "Research: Dft Website," (ECF No. 105-3 at 1), though it is unclear if the defendant business Capri Nails & Spa has a website at all.[4]  Even if Capri Nails & Spa had a website at a previous point in time, it is inconceivable that Mr. Schweitzer would linger for 45 minutes on the website for "research" purposes.  Remarkably, Mr. Schweitzer added an entry six days later, on December 29, 2020, stating that he had done another 2.25 hours of "Defendant Website Research: Yelp/Grubhub/MenuPages/Delivery.com/FB/web," (ECF No. 105-3 at 1), but Grubhub and Delivery.com are delivery platforms for items like meals and groceries.  It is unclear why Mr. Schweitzer would spend two hours and fifteen minutes browsing the internet on seemingly unrelated websites.  In any event, such simple research – even if it occurred and was a prudent use of time – could have been completed by a paralegal at a lower hourly rate.

In yet another example of overbilling, John Troy, the named partner who requests $650 per hour, submitted a billing entry on December 29, 2020 for one hour to "File the Complaint, Summons

---

[4] The Court takes judicial notice that, based on a Google search, defendant Capri Nails & Spa does not currently appear to have a website. *See Carter v. Scripps Networks, LLC*, 670 F. Supp. 3d 90, 98 n.4 (S.D.N.Y. 2023) ("A court may take judicial notice of information publicly announced on a party's website, as long as the website's authenticity is not in dispute") (citation modified).

& Civil Cover Sheet USDC," a task that involves uploading the documents through ECF and could be completed in 15 minutes or less by a more junior attorney.  Despite being admonished time and again for the past ten years, Mr. Troy still seeks partner-level compensation for simple tasks that could be completed by junior associates.  *See, e.g.*, *Run Guo Zhang v. Lin Kumo Japanese Rest. Inc.*, No. 13-cv-6667 (PAE), 2015 WL 5122530, at *2 (S.D.N.Y. Aug. 31, 2015) ("[A] close review of the tasks that Mr. Troy performed reveals that much and perhaps most of this work could have been performed by junior associates.")

Finally, the invoice submitted by Troy Law has at least two entries totaling 4.71 hours and $706.50 in fees which involve Tiffany Troy's non-legal translation work.  (ECF No. 105-3 at 3.) Troy Law already had been put on notice that "interpreting services are distinct from legal services and are not awarded as a component of attorney's fees."  *Wang v. XBB, Inc.*, 2023 WL 2614143, at *5. Nonetheless, Troy Law left it to the Court to sift through its billing entries to discover this recurring error yet again.

This Court joins other courts in finding that "[i]n lieu of making minute adjustments to individual timekeeping entries, a court may make across-the-board percentage cuts in the number of hours claimed, as a practical means of trimming fat from a fee application."  *Lee v. Mani & Pedi Inc.*, No. 20-cv-10787 (JCM),

2022 WL 3645118, at *13 (S.D.N.Y. Aug. 24, 2022) (collecting cases) (internal quotations omitted).

### 2.    Hourly Rate

As previously discussed, "the burden is on the fee applicant to produce satisfactory evidence — in addition to the attorney's own affidavits — that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum*, 465 U.S. at 895 n.11. Given that "reputation" is one of the factors the Supreme Court requires courts to consider in evaluating appropriate hourly rates for a law firm, the Court looks to Troy Law's reputation as determined by courts that have closely observed the firm's work. Remarkably, "[a] treatise worth of case law has emerged about the rates and hours that Troy Law has requested."[5] *Garcia v. Francis Gen. Constr. Inc.*, No. 20-cv-4323 (JPC), 2022 WL 2698434, at *7 (S.D.N.Y. July 12, 2022). Unfortunately, the Court cannot avoid a finding that the reputation of Troy Law is universally regarded as poor. Because courts must consider a law firm's reputation in evaluating the reasonableness of its requested rates, some courts have undertaken the unenviable task of compiling the jaw-dropping history of Troy Law's reprimands

---

[5] "Troy Law's tarnished history compels the Court to scrutinize its fee applications in this or any other case with special care." *Panora v. Deenora Corp.*, No. 19-cv-7267 (BMC), 2021 WL 5712119, at *6 (E.D.N.Y. Dec. 2, 2021).

and adverse consequences.[6]    Regrettably, even the chorus of
admonishments by courts has not deterred Troy Law from persisting
in unprofessional and ethically questionable practices.[7]

_____

[6] For example, in *Panora*, Judge Cogan included a footnote with 19 instances (as of December 2021) of "reprimands and adverse consequences due to [Troy Law's] poor practice":

> *See, e.g., Jin v. Shanghai Original, Inc.*, 990 F.3d 251, 263 (2d Cir. 2021) (finding that the "district court acted within its discretion in decertifying the class on the ground that class counsel [Troy Law] was no longer adequately representing the class"); *Lin v. Quality Woods, Inc.*, No. 17-cv-3043, 2021 WL 2343179, at *8 (E.D.N.Y. June 4, 2021) (directing Troy Law to show cause why sanctions should not be imposed for, among other conduct, "doubling down on bad faith assertions"); *Shi Ming Chen v. Hunan Manor Enter., Inc.*, No. 17-cv-802, 2021 WL 2282642, at *8 (S.D.N.Y. June 4, 2021) (denying plaintiff's motion for Rule 23 class certification as "[g]iven the litigation history of Troy and Troy Law in this Circuit as well as conduct throughout the present litigation, we cannot find Troy or Troy Law will serve as adequate class counsel"); *Rodpracha v. Pongsri Thai Rest. Corp.*, No. 14-cv-02451, 2021 WL 1733515, at *2 (S.D.N.Y. Mar. 22, 2021) (finding Troy Law inadequate to represent the putative class and noting that the Court "shares the broader concern that has been expressed by other judges, in this district and elsewhere, that, regardless of its professed level of experience in wage-and-hour cases, Troy Law has shown a tendency towards prejudicial neglect of its clients' interests"); *Yi Mei Ke v. J R Sushi 2 Inc.*, No. 19-cv-7332, 2021 WL 965037, at *3 (S.D.N.Y. Mar. 15, 2021) (in sanctioning Troy Law, noting that "[s]omething more than a written admonishment is required, however, both to deter repetition of the misconduct and to protect Troy Law's potential future clients"); *Bao Guo Zhang v. Shun Lee Palace Rest., Inc.*, No. 17-cv-00840, 2021 WL 634717, at *18 (S.D.N.Y. Feb. 16, 2021) (ordering Troy Law to show cause why it should not be sanctioned for its "assertion and continuation of meritless claims," including its objections to the settlements of plaintiffs it does not represent); *Ji Li v. New Ichiro Sushi, Inc.*, No. 14-cv-10242, 2020 WL 2094095, at *10, 12 (S.D.N.Y. Apr. 30, 2020) (issuing sanctions where the Court found that Troy Law's continued pursuit of "entirely meritless" claims were [sic] "in bad faith" and "improper[ ]");*Yuajian Lin v. La Vie En Schezuan Rest. Corp.*, No. 15-cv-9507, 2020 WL 1819941 (S.D.N.Y. Apr. 9, 2020) (reducing Mr. Troy's hourly rate due to performance issues and noting that courts have reduced Mr. Troy's requested rate a number of times "where Troy's performance at trial demonstrated a lack of skill and/or professionalism."); *Guangqing Lin v. Teng Fei Rest. Grp. Inc.*, No. 17-cv-17742020, WL 264407, at *3 (S.D.N.Y. Jan. 17, 2020) (sanctioning Troy Law and attorney Schweitzer for repeated "noncompliance with court-ordered deadlines"); *Shiqiu Chen v. H.B. Rest. Grp., Inc.*, No. 16-cv-2005, 2020 WL 115279, at *12 n.20 (S.D.N.Y. Jan. 9, 2020) (observing this was "yet another instance

in which ... Troy Law PLLC has submitted conflicting sworn testimony" and that "[t]his course of conduct raises concerns about counsel's diligence in meeting ethical obligations to sufficiently investigate matters before they are filed and to guard against and take appropriate action with respect to submission of false testimony") (punctuation omitted); *Jianjun Chen v. 2425 Broadway Chao Rest., LLC*, 331 F.R.D. 568, 575 (S.D.N.Y. 2019) (imposing sanctions for discovery violations against Mr. Troy); *Yu Zhang v. Sabrina USA Inc.*, No. 18-cv-12332, 2019 WL 6724351, at *3 (S.D.N.Y. Dec. 10, 2019) (noting concerns about "discrepancies regarding key facts that would be difficult to classify as a mere mistake" and that other "evidence in the record further raises questions whether Plaintiff submitted his affidavits in bad faith"); *Ruixuan Cui v. E. Palace One, Inc.*, No. 17-cv-6713, 2019 WL 4573226, at *4, *6 (S.D.N.Y. Sept. 20, 2019) (reciting accusations from defendants that the plaintiff baselessly brought wage-and-hour claims against unrelated defendants, including that he "merely brought claims against individuals whose 'names somehow appear in public records of numerous dissolved corporations' "); *Chun Lan Guan v. Long Island Bus. Inst., Inc.*, No. 15-cv-2215, 2019 WL 3807455, at *1 (E.D.N.Y. Aug. 13, 2019) (upholding monetary sanctions where Troy Law "failed three times to submit a draft joint pretrial order ('JPTO') to Defendants' counsel that complied with this Court's individual rules, in accordance with the deadlines set by Magistrate Judge Scanlon"); *Shanfa Li v. Chinatown Take-Out Inc.*, No. 16-cv-7787, 2019 WL 3715086, at *6 (S.D.N.Y. Aug. 7, 2019) (reducing Mr. Troy's fee from his requested rate to $300 an hour where he "repeatedly interrupted the Court, was disrespectful, and struggled to pose clear questions"); *Feng Lin v. Quality Woods, Inc.*, No. 17-cv-3043, at *3-6 (E.D.N.Y. Jan. 28, 2019) (finding that service was not properly made on all defendants and observing that "[t]his is not the first time th[e] Court has raised serious questions about the submissions made by Troy"); *Jianshe Guo v. A Canaan Sushi Inc.*, No. 18-cv-4147, 2019 WL 1507900, at *4 (S.D.N.Y. Apr. 5, 2019) (dismissing case for failure to prosecute and assessing a monetary sanction because Troy Law and attorney Schweitzer "repeatedly failed to comply with this Court's deadlines, despite extensive experience with this Court and in this District"); *Jianman Jin v. Shanghai Original, Inc.*, No. 16-cv-5633, 2018 WL 1597389, at *15 (E.D.N.Y. Apr. 2, 2018) (finding "concerning" discrepancy between the plaintiff's sworn affidavit and subsequent deposition testimony); *Hui Luo v. L & S Acupuncture, P.C.*, No. 14-cv-1003, 2015 WL 1954468, at *2 (E.D.N.Y. Apr. 29, 2015) (noting that court could not justify a rate for Troy in excess of $300 per hour, where "[t]he trial was very rough in terms of demonstrating Mr. Troy's ability to formulate questions according to the rules of evidence").

*Panora*, 2021 WL 5712119, at *5 n.3.

Even after the issuance of Judge Cogan's opinion in *Panora* in December 2021, Troy Law has undertaken no discernible efforts to rebuild its reputation. For example, in March 2023, Judge Chen found that "Troy Law's request to compensate Ms. Troy as an attorney for performing non-legal work is misleading, if not dishonest and unethical." *Wang*, 2023 WL 2614143, at *5. In November 2024, Judge Amon noted the "the prevalence of improper billing in Mr. Troy's invoices."

Although the Supreme Court in *Blum* instructs courts to assess reasonableness of hourly rates in light of "similar services by lawyers of <u>reasonably comparable</u> skill, experience and reputation," 465 U.S. at 895 n.11 (emphasis added), the Court is hard-pressed to find other employment lawyers in this district with a "reasonably comparable" record of misconduct and disrepute.

### 3.    Appropriate Lodestar Figure

As the Second Circuit has held, a court cannot modify an FLSA settlement it finds unreasonable.  Instead, "[i]f a district court concludes ... that a proposed settlement is unreasonable in whole or in part, the court cannot simply rewrite the agreement -- it must reject the agreement or give the parties an opportunity to revise it."  *Fisher*, 948 F.3d at 605.  "In its discretion, a district court may suggest – as it does in an order of additur or remittitur – an amount of attorneys' fees and costs it would find reasonable under the circumstances."  *Id.*

---

*Juarez v. 156-40 Grill LLC*, No. 15-CV-5081 (CBA) (LGD), 2024 WL 4834313, at *4 (E.D.N.Y. Nov. 20, 2024).  In March 2025, Judge Engelmayer expressed "dismay at the misconduct of [] Troy Law."  *Ke v. JR Sushi 2 Inc.*, No. 19-cv-7332 (PAE) (BCM), 2025 WL 901842, at *5 (S.D.N.Y. Mar. 24, 2025).  As recently as April 2025, Judge Broderick made an explicit "finding of bad faith" on the part of Troy Law and issued sanctions.  *Zhang v. Tong*, No. 17-cv-840 (VSB) (VF), 2025 WL 992359, at *5 (S.D.N.Y. Apr. 1, 2025).

[7] As discussed earlier, in the instant case, one of John Troy's billing entries on December 1, 2020 states that he spent 0.90 hours to "Prepare and Sign Retainer with Client(s)," (ECF No. 105-3 at 1), but the retainer agreement filed by Troy Law, (ECF No. 105-2), shows a templated, fill-in-the-blank retainer agreement that (i) has no dates, (ii) has no initials, and (iii) is not signed by Mr. Troy.

21

In this case, Troy Law seeks $650 per hour for Mr. Troy's work; $400 per hour for Mr. Schweitzer's associate-level work; $200 for Mr. Schweitzer's travel and paralegal-level work; $250 per hour for Ms. Troy's associate-level work; $150 per hour for her interpretation, paralegal-level work, and travel; $200 for Preethi Kilaru's work; and $150 for Gavin Dass's work. (ECF No. 105.)

As to Troy Law's hourly rates, "[j]udges in this district have routinely reduced Troy Law Firm's requested hourly rates for being higher than what is commonly awarded."[8] *Hong v. Mito Asian Fusion, Inc.*, No. 19-cv-3149 (TAM), 2023 WL 3092722, at *5 (E.D.N.Y. Apr. 26, 2023) (collecting cases). This Court similarly finds a significant reduction in hourly rates is warranted.[9]

As to Troy Law's hours worked, the clear evidence of both overbilling and potentially unethical billing present in this case warrants "across-the-board percentage cuts in the number of hours claimed, as a practical means of trimming fat from a fee application." *Lee*, 2022 WL 3645118, at *13 (collecting cases)

---

[8] Generally, courts have found reasonable hourly rates for Troy Law's attorneys to be as follows: $350 to $400 for Mr. Troy, $200 to $300 for Mr. Schweitzer, and $100 to $150 for Ms. Troy. *Teoh v. Manhasset Rest., LLC*, No. 22-cv-4110 (NJC) (LGD), 2025 WL 1088045, at *5 (E.D.N.Y. Apr. 10, 2025), *report and recommendation adopted,* No. 2:22-CV-4110 (NJC) (LGD), 2025 WL 1736835 (E.D.N.Y. June 23, 2025) (collecting cases). "[C]ourts typically award only half of counsel's reasonable rate for travel time." *Id.* at *9.

[9] "While some courts may occasionally accede to Troy Law's lofty fee requests, the overwhelming majority significantly reduce Troy Law's hourly rates for the same attorneys and support staff who appear in this case." *Teoh*, 2025 WL 1088045, at *5.

(internal quotations omitted).  "An 'across-the-board reduction' is especially appropriate where billing entries reflect 'a variety of obviously clerical tasks, as well as entries that blend clerical tasks with legal tasks.'"  *Teoh*, 2025 WL 1088045, at *9 (quoting *Lilly v. City of New York*, 934 F.3d 222, 234 (2d Cir. 2019)).  "The reduction can range from 5 or 10% at the lower end for a limited amount of improper billing practices to 50% for egregious litigation conduct or excessive inefficiencies."  *Lee*, 2022 WL 3645118, at *13 (internal citations omitted) (collecting cases).

Having reviewed and considered Troy Law's submitted invoice for attorney's fees, the firm's relative "skill, experience and reputation," *Blum*, 465 U.S. at 895 n.11, and Troy Law's ongoing refusal to remedy its professional reputation and billing practices after years of admonishments by courts, the Court rejects the proposed attorney's fees in the parties' settlement and instead "suggest[s]" pursuant to *Fisher* that a reasonable lodestar figure would be as follows:

- Reasonable billing rates would be 50% less than the amounts proposed by Troy Law.[10]

---

[10] A 50% reduction in billing rates would result in the following rates: $325 per hour for Mr. Troy's work; $200 per hour for Mr. Schweitzer's associate-level work; $100 for Mr. Schweitzer's travel and paralegal-level work; $125 per hour for Ms. Troy's associate-level work; $75 per hour for her interpretation, paralegal-level work, and travel; $100 for Preethi Kilaru's work; and $75 for Gavin Dass's work.  (*See* ECF No. 105.)

- A reasonable number of hours worked would be 20% less than the amount of hours evident in Troy Law's invoice.[11]  (ECF No. 105-3.)

- Accounting for the reductions in the hourly rate and compensable hours, the lodestar figure would be reduced from $93,813.50 to $37,525.40.

After careful consideration of the record in this case and the appropriate reductions to Troy Law's hourly rates and compensable hours, the Court finds that the maximum reasonable attorney's fee in this case would be approximately $37,525.40.

B.    Costs

The costs submitted by Troy Law for costs appear appropriate and consist of expected costs such as for translators, transcripts, filing fees, and postage.[12]  (ECF No. 105-3 at 12.) The costs of $6,773.50 are reasonable.

---

[11] In addition to the previously-identified examples of questionable billing, Troy Law's invoice includes numerous other inexplicable entries that support a significant reduction in compensable hours.  For example, on August 15, 2021, Gavin Dass block-billed 3.25 hours for an entry titled "Prepare Mailing" after having billed 1.17 hours the day before for an identically-titled entry ("Prepare Mailing").  (ECF No. 105-3 at 3.)  Six days later, on August 21, 2021, Gavin Dass again block-billed 3.25 hours for an entry titled "Prepare Mailing." (ECF No. 105-3 at 3.)  In a more egregious example, on July 28, 2023, Preethi Kilaru block-billed 8.50 hours for an entry titled "Prepare Courtsey [sic] Copy Class Motion."  (ECF No. 105-3 at 5.)

[12] As previously discussed, any translation services provided by Tiffany Troy, should have been included in Troy Law's invoice as costs, not attorney's fees.

## CONCLUSION

The parties' motion for court approval of the proposed settlement in this case, (ECF No. 102), is respectfully DENIED WITHOUT PREJUDICE because the proposed attorney's fees are unreasonable. The Court finds that the maximum reasonable attorney's fee in this case would be approximately $37,525.40.

**So ordered.**

Dated:    August 22, 2025
          Brooklyn, New York        _____
                                     **Kiyo A. Matsumoto**
                                     United States District Judge
                                     Eastern District of New York